**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-00691-NYW

DAVID S. FRANK,

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,[1]

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

    This civil action arises under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c), for review of the Commissioner of Social Security Administration's ("Commissioner" or "Defendant") final decision denying Plaintiff David S. Frank's ("Plaintiff" or "Mr. Frank") application for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"). Pursuant to the Parties' consent [#9], this civil action was assigned to this Magistrate Judge for a decision on the merits. *See* [#22]; *see also* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. After carefully considering the Parties' briefing, the entire case file, the Administrative Record, and the applicable case law, this court respectfully **AFFIRMS** the Commissioner's decision.

---

[1] On July 9, 2021, President Biden appointed Kilolo Kijakazi as Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Kijakazi should be substituted for Andrew M. Saul, former Commissioner of Social Security, as the defendant in this suit. No further action need be taken to continue this suit pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## BACKGROUND

Mr. Frank, born October 14, 1969, filed an application for DIB and SSI on May 9, 2017, alleging a disability onset date of December 15, 2014. [#14-5 at 175, 177].[2] Specifically, Plaintiff alleged that he was suffering from, and prevented from working due to, the following medical conditions: scoliosis, chronic back pain, depression, bipolar disorder, post-traumatic stress disorder ("PTSD"), gout, kyphosis,[3] anxiety, and kidney stones. [#14-6 at 220]. The Social Security Administration denied Mr. Frank's claim on January 18, 2018. [#14-4 at 101]. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), [#14-4 at 165], and a hearing was held before the ALJ on May 6, 2019. *See* [#14-2 at 40]. The ALJ heard testimony from Plaintiff and Vocational Expert Nora Dunn (the "VE") at the hearing. *See generally* [*id.* at 41, 45, 47].

At the hearing, Mr. Frank testified that he had not worked since August 2016 due to frequent back pain. [*Id.* at 51]. He had recently undergone spinal fusion surgery and was still recovering from that surgery. [*Id.* at 53]. Plaintiff testified that he sometimes wore a back brace, typically for 10 to 15 minutes at a time, was taking medications for pain management and for his psychological needs, and was participating in physical therapy. [*Id.* at 51, 54-55, 57]. He testified that his pain level was just as severe as it was prior to the surgery and that his surgeon did not understand why his pain did not decrease. [*Id.* at 60]. Mr. Frank stated that he was able to do his own laundry but could not grocery shop. [*Id.* at 59]. He also experienced difficulty sleeping; he

---

[2] When citing to the Administrative Record, the court utilizes the docket number assigned by the Electronic Court Filing ("ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents, the court cites to the document and page number generated by the ECF system.

[3] Kyphosis is "an exaggerated, forward rounding of the back." *See Kyphosis: Overview*, Mayo Clinic, *available at* https://www.mayoclinic.org/diseases-conditions/kyphosis/symptoms-causes/syc-20374205 (last visited August 5, 2021).

was able to only sleep in one position, on his back, and did not get more than three hours of uninterrupted sleep. [*Id.*].

Next, the VE summarized Plaintiff's work history as a fast-food manager or pizza maker. [*Id.* at 62-63]. The VE did not specifically opine as to what type of work Mr. Frank could perform but did answer several hypothetical questions from the ALJ concerning the types of work that hypothetical individuals with varying restrictions could perform. *See generally* [*id.* at 63-67].[4] Generally, the VE testified that the hypothetical individuals set forth by the ALJ could perform work as a cashier II, a furniture rental consultant, marking clerk, a document preparer, or a call out operator. [*Id.* at 64-66]. The VE also testified that these jobs exist in Colorado and in the national economy. *See* [*id.*].

On June 12, 2019, the ALJ issued a decision denying Plaintiff's claim. [*Id.* at 15]. The ALJ determined that Mr. Frank met the insured status requirements of the Act through December 31, 2021 and had not engaged in substantial gainful activity since December 15, 2014. [*Id.* at 17-18]. In addition, the ALJ found that Mr. Frank has the following severe impairments: Scheuermann's Kyphosis (scoliosis of the thoracic spine) status post T1-L1 fusion; bipolar disorder; cannabis use disorder; asthma; and gout. [*Id.* at 18]. However, the ALJ determined that Mr. Frank "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" listed in Title 20 of the Code of Federal Regulations, Chapter III, Part 404, Subpart P, Appendix 1. [*Id.*]. The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R.

---

[4] For example, the ALJ asked the VE to consider a hypothetical individual who could occasionally lift and carry 20 pounds, frequently lift 10 pounds, sit for six hours in an eight-hour workday, occasionally climb ramps and stairs, and occasionally stoop, kneel, crouch, and crawl, and asked the VE what types of jobs that individual could perform. *See* [#14-2 at 63-64].

§§ 404.1567(b) and 416.967 with the following limitations: "is able to lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk for six hours in an eight[-]hour day; sit for six hours in an eight[-]hour day; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; and occasionally stoop crouch, kneel and crawl." [*Id.* at 20]. Although the ALJ found that Mr. Frank is unable to perform his past relevant work, [*id.* at 31], he also concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." [*Id.*]. Ultimately, the ALJ found that Plaintiff does not have a disability as defined in the Act. [*Id.* at 32].

Plaintiff requested the Appeals Council review of the ALJ's decision, which the Appeals Council denied, rendering the ALJ's decision the final decision of the Commissioner. *See* [*id.* at 1]. Plaintiff sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on March 12, 2020, invoking this court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 1383(c)(3) in this action.

## LEGAL STANDARDS

An individual is eligible for DIB under the Act if he is insured, has not attained retirement age, has filed an application for DIB, and has a disability as defined in the Act. 42 U.S.C. § 423(a)(1). In addition, SSI is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382. The earliest a claimant can receive SSI is the month following the month within which the claimant filed his application, and thus the claimant must establish that she was disabled on or prior to his application date. *See* 20 C.F.R. §§ 416.200, 416.335; *see also* 20 C.F.R. § 416.912(b)(1) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application").

4

An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002). When a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The burden is on the claimant to prove he was disabled prior to his date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). These include:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the Residual Functional Capacity ("RFC") to perform his past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis[,]" while the Commissioner bears the burden of proof at step five. *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be

5

made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In reviewing the Commissioner's final decision, the court limits its inquiry to whether substantial evidence supports the final decision and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1178 (10th Cir. 2020) (internal quotation marks omitted); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). "But in making this determination, [the court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

## ANALYSIS

Mr. Frank challenges the ALJ's decision on one basis: that the ALJ erred when he found the opinion of Dr. Shay Bess, Plaintiff's treating physician, "unpersuasive" in determining Plaintiff's RFC. [#19 at 1]. More specifically, Mr. Frank asserts that, as a treating physician, Dr. Bess's opinion was entitled to controlling weight, and if the ALJ chose not to give controlling weight to Dr. Bess's opinions, the ALJ was required to nevertheless "give the opinion deference" and determine the weight to be afforded the opinion based on certain factors set forth in 20 C.F.R. §§ 404.1527 and 416.927: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the degree to which the treating physician's opinion is supported by objective evidence; (4) whether the opinion is

6

consistent with the record; (5) whether the treating physician is a specialist; and (6) other relevant factors which tend to support or contradict the medical source opinion. [*Id.* at 5]. According to Mr. Frank, because "[t]here is no evidence in [the ALJ's decision] that the ALJ considered all of these factors," the ALJ's decision must be reversed. [*Id.* at 6]. Defendant disagrees. Defendant asserts that the regulations relied upon by Plaintiff in asserting his argument are outdated, *see* [#30 at 1], and argues that the ALJ properly evaluated the evidence in this case based on presently applicable regulations. [*Id.* at 1, 7]. In his Reply, Plaintiff concedes that he "cited to outdated statutes and case law in support of his argument," but states that "[e]ven applying the new methods of consideration of a medical opinion as outlined in [the applicable regulations], the ALJ still erred in his finding that Dr. Bess['s] opinion was unpersuasive." [#21 at ¶ 1]. The court now turns to the Parties' arguments.

***Controlling Regulations***. The court first addresses the applicable controlling law before moving on to the Parties' substantive arguments. In assessing a claimant's RFC, the ALJ must address the record's medical source opinions. *See Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015). Prior to 2017, the Social Security Regulations (the "Regulations") afforded a treating source opinion controlling weight if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also id.* ("Generally, we give more weight to medical opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone."). If the ALJ did not give the treating provider's opinion controlling weight, the ALJ was required by the Regulations to weigh the factors cited by

7

Plaintiff above in determining the level of weight to give the medical opinion. *Id.* An examining physician's opinions were also generally entitled to more weight than non-examining sources. *See Gablehouse v. Comm'r*, No. 19-cv-02758-NYW, 2020 WL 5500457, at *4 (D. Colo. Sept. 10, 2020).

However, "[i]n 2017, the [R]egulations were changed to no longer 'defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s).'" *Coyle v. Saul*, No. 18-cv-01110-PAB, 2020 WL 4529939, at *3 (D. Colo. Aug. 6, 2020) (quoting 20 C.F.R. § 404.1520c(a)). Instead, the Regulations now provide that an ALJ must evaluate the persuasiveness of a medical opinion using the following factors: (1) supportability; (2) consistency; (3) the provider's relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of the treatment relationship, and whether the treatment relationship is an examining relationship; (4) the medical source's area of specialization; and (5) other factors "tending to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c); *Pearson v. Saul*, No. 20-cv-01808-NRN, 2021 WL 2549214, at *3 (D. Colo. June 22, 2021). Because Mr. Frank's claim was filed after March 27, 2017, the latter Regulations apply, as Plaintiff concedes. 20 C.F.R. § 404.1520c; *see also* [#21 at ¶ 1]. Thus, the court considers Plaintiff's arguments in the context of whether the ALJ properly considered Dr. Bess's medical opinions pursuant to § 404.1520c.[5]

***Dr. Bess's Opinions Concerning Plaintiff's Limitations***. Mr. Frank asserts that the ALJ erred in evaluating Dr. Bess's opinions as to Mr. Frank's limitations because "the ALJ failed to

---

[5] To the extent possible, the court considers Plaintiff's arguments in his Opening Brief [#19], insofar as they do not rely on inapplicable Regulations, as well as Plaintiff's arguments in his Reply Brief [#21].

adequately articulate or give sufficient explanation as to why he found Dr. Bess['s] opinion unpersuasive." [#21 at ¶ 7]. Specifically, Mr. Frank argues that the ALJ's decision should be reversed because the ALJ (1) failed to adequately reference the factors outlined in 20 C.F.R. § 404.1520c and (2) "references only four medical records . . . to support his finding that Dr. Bess['s] opinion with regards to the Plaintiff's functional capacity was unpersuasive." [#21 at ¶ 5].[6]

As set forth above, an ALJ evaluates a medical source opinion in light of the following factors: supportability, consistency, relationship to the claimant, specialization, and other relevant factors. 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 404.1520c(c). The most important factors in evaluating persuasiveness are supportability and consistency, and the ALJ must explain his or her approach with respect to those factors when evaluating a medical opinion. 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, explain how the ALJ considered the remaining factors in his or her evaluation, 20 C.F.R. § 404.1520c(b)(2), unless the ALJ finds that there are two or more medical opinions that are equally well-supported and consistent with the record "but are not exactly the same;" in this circumstance, the ALJ articulates how he or she considered "the other most persuasive factors." 20 C.F.R. § 404.1520c(c).

With respect to supportability, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Pearson*, 2021 WL 2549214, at *3 (quoting *Vellone v. Saul*, No. 20-cv-00261-RA-KHP, 2021 WL

---

[6] In his Reply Brief, Mr. Frank raises various other arguments challenging the contentions Defendant makes in the response brief. *See, e.g.*, [#21 at ¶¶ 3-4 (arguing that Defendant's arguments in the response brief are "inaccurate" and are a "mischaracterization" of the record]. However, these arguments do not concern whether the ALJ erred in reaching his decision to deny Plaintiff benefits. For this reason, the court does not address these arguments.

319354, at *6 (S.D.N.Y. Jan. 29, 2021)). "Consistency, on the other hand, 'is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record.'" *Id.* (quoting *Vellone*, 2021 WL 319354, at *6).

Here, the ALJ analyzed Dr. Bess's medical opinions as follows:

> Bess Shay, M.D. [sic],[7] opined in a physical residual functional capacity questionnaire dated May 4, 2019 that the claimant needed a job that permitted shifting positions at will; that he would sometimes need to take unscheduled breaks of five minutes, on an hourly or less basis; that the claimant did not require the use of a cane or other assistive device; and that he was able to occasionally lift and carry twenty pounds; occasionally look down, turn his head right or left, look up, and hold his head in a static position. . . . Dr. [Bess] opined the claimant was able to occasionally twist and climb stairs, never stoop, crouch or climb ladders; did not have significant limitations with reaching, handling or fingering; that he was likely to have good days and bad days and that he was likely to be absent from work more than four days per month. . . . The undersigned finds this opinion not persuasive. Dr. [Bess] did not support [his] opinion with an explanation or reference to the medical record. In addition, [his] opinion is not generally consistent with the overall record. For example, [a] finding on examination in November of 2018 included steady gait, that the claimant was able to walk on heels and toes, that his strength was 5/5, that straight leg raising was negative, and that range of motion of the hips and knees was non-painful. . . . The claimant reported on November 2, 2018 that he was able to independently perform activities of daily living. . . . In February of 2019, findings included normal motor strength and tone, supple neck, and cautious, but non-assisted gait.

[#14-2 at 30 (citations omitted)].

Mr. Frank asserts that the ALJ erred in issuing his decision because the ALJ "makes no reference to the 'other factors' outlined in 20 C.F.R. §404.1520c(c)(1-5)(2017)." [#21 at ¶ 5]. Specifically, he argues that the ALJ erred when he did not reference (1) the fact that Dr. Bess is a highly trained orthopedic surgeon with a specialty in correcting scoliosis and other spine issues; (2) the purpose of Plaintiff's treatment relationship with Dr. Bess; or (3) the fact that Dr. Bess, as a treating physician, "should have a better understanding of Plaintiff's physical issues and

---

[7] The Administrative Record demonstrates that Plaintiff's physician's name is Shay Bess, not Bess Shay. *See* [#14-17 at 1018].

treatment course" than the state agency physician.[8] [*Id.*]. In other words, Mr. Frank suggests that the ALJ was required to address his treatment relationship with Dr. Bess and Dr. Bess's area of specialization. *See generally* [*id.*]. However, the Regulations make clear that an ALJ "may, but [is] not required to, explain how [the ALJ] considered these factors," 20 C.F.R. § 404.1520c(b)(2), unless the ALJ must distinguish between two equally well-supported and consistent opinions. 20 C.F.R. § 404.1520c(c). Here, there is no indication that the ALJ found Dr. Bess's opinion to be equally well-supported and consistent with some other medical source opinion so as to require the ALJ to distinguish Dr. Bess's opinion from the other; in fact, the ALJ found that Dr. Bess's medical opinion was "unpersuasive" because it was *not* supported by or consistent with the record. *See* [#14-2 at 30]. The ALJ was thus not required to expressly explain his consideration of these additional factors, as Plaintiff suggests, and for this reason, the court finds no reversible error here. 20 C.F.R. § 404.1520c(b)(2).

The court thus turns to whether the ALJ sufficiently considered and explained his approach when evaluating the supportability and consistency of Dr. Bess's opinion, the two factors which the ALJ must address in his decision. *Pearson*, 2021 WL 2549214, at *3. While the ALJ's analysis is somewhat minimalist, the court "cannot insist on technical perfection" in reviewing the ALJ's decision. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Here, the court finds that the ALJ's analysis properly considers both the supportability and the consistency of Dr. Bess's opinions. The ALJ first found that Dr. Bess "did not support [his] opinion with an explanation or reference to the medical record." [#14-2 at 30]. Indeed, the Physical Residual Functional Capacity Questionnaire filled out by Dr. Bess, in which Dr. Bess sets forth his opinions as to Plaintiff's

---

[8] The ALJ found that the opinion of the state agency consultant, Dr. Aaron Snyder, "slightly persuasive." [#14-2 at 29].

limitations, contains no reference to Plaintiff's medical record or any other supporting documents so as to explain the basis for Dr. Bess's opinions. *See* [#14-17 at 1016-18]. By noting that Dr. Bess's opinions were not accompanied by any explanations or reference to the objective medical evidence, the ALJ sufficiently explained that Dr. Bess's opinions concerning Plaintiff's limitations lacked supportability in the record. *Cf. Pearson*, WL 2549214, at *4 (finding that the ALJ sufficiently considered the supportability of a medical opinion when the ALJ "noted that [the physician] offered 'only very limited exam findings' and did not 'explain how her objective medical findings supported her endorsed degree of limitation'"); *Vellone* 2021 WL 319354, at *6 (supportability increases with the medical source's increased citations to the medical record); *see also Miles v. Saul*, No. 20-cv-01456-WJM, 2021 WL 3076846, at *5 (D. Colo. July 21, 2021) ("[B]ecause [the medical source] . . . does not link any treatment records to her medical opinion, the Court cannot conclude that the ALJ erred by determining that her opinion is unpersuasive.").

Additionally, the ALJ considered the consistency of Dr. Bess's opinions with the record as a whole, finding that his "opinion is not generally consistent with the overall record" and including citations to the record in support of this finding. [#14-2 at 30]. Specifically, the ALJ found that Dr. Bess's opinions were not consistent with the overall medical record because Dr. Bess had, months before completing the Physical Residual Functional Capacity Questionnaire, determined that Plaintiff had a steady gait, 5/5 strength, and normal motor strength and tone, and that Plaintiff could walk on his heels and toes and had non-painful range of motion in his hips and knees. *See* [*id.*]; *see also* [#14-18 at 1023, 1040]. Moreover, throughout his decision, the ALJ cites ample record evidence from the same timeframe with similar findings. *See, e.g.*, [#14-2 at 24 (on February 1, 2019, Plaintiff's gait was steady, strength was 5/5, and had un-painful range of motion of the knees and hips)]; [#14-17 at 972]; [#14-2 at 25 (Plaintiff made steady progress in physical

therapy and reported decreased frequency of pain)]; [#14-16 at 941]; [#14-2 at 25 (in November 2018, physical therapist noted that Plaintiff was moving well independently); [#14-15 at 826]; [#14-2 (Plaintiff reported on February 15, 2019 that he was doing much better overall)]; [#14-15 at 769)]. By expressly citing record evidence with which the ALJ determined Dr. Bess's opinion to be inconsistent, the ALJ sufficiently evaluated the consistency of Dr. Bess's opinion as compared to the medical record as a whole and the court thus finds no error in his finding that Dr. Bess's opinion was not persuasive. *See Pearson*, WL 2549214, at *4 (concluding that the ALJ properly considered the consistency of the medical source opinion where the ALJ found that the physician's opinion was inconsistent with the record and cited record evidence in support of that finding); *Miles*, 2021 WL 3076846, at *5 (inconsistencies in medical sources' opinions "further support[ed] the ALJ's conclusion that their opinions were unpersuasive").[9] Accordingly, the court finds that the ALJ complied with the applicable Regulations and adequately supported his finding by addressing the supportability and consistency of Dr. Bess's restriction opinions.

To the extent Plaintiff attempts to assert that the medical record evidence supports a finding of disability, *see* [#21 at 2 (explaining the "significant objective medical evidence regarding the Plaintiff's medical condition")], or tries to challenge the ALJ's reliance on certain record evidence in finding Dr. Bess's opinion unpersuasive, *see* [#19 at 6-8]; *see also* [*id.* at 9 (arguing that the ALJ improperly relied on two medical records "which were dated within two weeks of the Plaintiff's eleven level fusion" (and are thus somehow less reliable) and two medical records

---

[9] Mr. Frank asserts that "[c]ertain articulation requirements exist regarding the requirement that an ALJ explain how he or she considered the supportability and consistency factors for a medical source's medical opinion" and that "[r]eversal is warranted if an ALJ fails to 'follow its own procedural regulation.'" [#21 at ¶ 6]. But Plaintiff does not set forth these supposed "articulation requirements" or explain how the ALJ did not meet those requirements or why reversal is otherwise warranted. *See generally* [*id.*]. The court is respectfully not persuaded by this argument.

"which were taken completely out of context")]; *see also* [#21 at ¶ 6 (same)], these are not proper bases on which to challenge an ALJ's decision. "[T]he fact that the evidence could support another conclusion does not necessarily mean that the ALJ erred in [his] analysis." *Miles*, 2021 WL 3076846, at *4. In reviewing whether an ALJ decision is supported by substantial evidence, the court "cannot reweigh the evidence or substitute [its] judgment" for that of the ALJ. *Smith*, 821 F.3d at 1266; *see also Lax*, 489 F.3d at 1084 (the court cannot "displace [the Commissioner's] choice between to fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo"); *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (noting that the ALJ is "entitled to resolve any conflicts in the record"). The court declines to reweigh the evidence in this case or otherwise substitute its judgment for that of the ALJ. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("In short, the record contains support for both the notion that Mr. Allman has extreme deficiencies in concentration, persistence, and pace, and the notion that his mental limitations are not that severe. The ALJ was entitled to resolve such evidentiary conflicts and did so."). And, as set forth above, the ALJ sufficiently supported his decision that Dr. Bess's opinion was unpersuasive with citations to the medical record. [#14-2 at 24-30]. Therefore, the court finds that the ALJ's decision was supported by substantial evidence. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir. 1992). ("As long as substantial evidence supports the ALJ's determination, the [Commissioner's] decision stands.").

Finally, insofar as Plaintiff finds error in the ALJ's failure to mention or reference certain portions of the medical record, *see* [#19 at 7 (arguing that, in addressing Dr. Bess's medical evaluation dated February 1, 2019, the ALJ "failed to note that the Plaintiff still complained of significant back pain . . ., neck pain . . . and leg pain . . . and was having difficulty sleeping because

14

of the pain" and failed to "mention that . . . Dr. Bess had spoken to the Plaintiff about his physical restrictions . . . or that he referred the Plaintiff for additional physical therapy")], the court finds no reversible error here. First, the court notes that an ALJ need not "reference everything in the administrative record" in order to sufficiently support or explain his or her decision. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Even so, the ALJ did, in fact, mention Dr. Bess's notes referenced by Plaintiff here: "Spine center progress notes of February 1, 2019 show the claimant reported back pain, neck pain, depression, anxiety, and difficulty sleeping. 12F/2. . . . The claimant was to continue with physical therapy and follow up regarding pain management. 12F/3." [#14-2 at 24]; *see also Kies v. Saul*, No. 19-cv-00848-REB, 2019 WL 6609473, at *3 (D. Colo. Dec. 5, 2019) ("Prior to assessing the medical opinions, the ALJ set forth a detailed recitation of the medical evidence relevant to plaintiff's alleged impairments. Having once discussed this evidence, the ALJ was not required to do so again."). Accordingly, reversal is not warranted here.

In sum, the court finds no error in the ALJ's assessment of Dr. Bess's opinions. The ALJ explained why he found Dr. Bess's opinions unpersuasive, focusing on the opinions' supportability and consistency with the record—nothing more is required. "Given the nature and limits of [the court's] review, and given as well the detailed reasons offered by the ALJ for rejecting Dr. [Bess's] opinion, we do not second-guess his decision." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001). For all of these reasons, I find no error in the ALJ's decision.

**CONCLUSION**

For the reasons stated herein, the court hereby **AFFIRMS** the Commissioner's final decision.

DATED:  August 25, 2021                              BY THE COURT:

                                                     Nina Y. Wang
                                                     United States Magistrate Judge